EMMA A. KURTZ and Another v. ST. PAUL & DULUTH RAILROAD COMPANY.[1]

June 8, 1896.

Nos. 9861—(124).

**Appeal—Reversal of Judgment—Effect.**

The effect of the decision of this court on a former appeal reversing the judgment of the trial court (61 Minn. 18), was not to grant a new trial, but to remand the cause, leaving the trial court at liberty to proceed in any way not inconsistent with the opinion of this court; and, upon the findings which remained undisturbed, the defendants were entitled to judgment.

**Judgment Inter Alios—Evidence.**

Rule applied that a judgment inter alios is not evidence against a third party of any of the facts upon which it was based.

**Probate Court—Power to Correct Files and Records.**

Over 23 years after the confirmation of a guardian sale, and after the execution of the guardian's deed, the probate court assumed to amend all the files and records, from the petition for license to sell to the guardian's deed, so as to exclude from the description a part of the land described in the petition for license, license to sell, report of sale, order of confirmation, and guardian's deed. *Held,* that the action of the probate court was without jurisdiction, and void.

**New Trial—Laches.**

*Held,* also, that the plaintiffs were guilty of such gross laches that it was error to grant them a new trial.

[1] Reported in 67 N. W. 808.

Appeal by defendants St. Paul & Duluth Railroad Company and Northern Pacific Railroad Company from an order of the district court for St. Louis county, Morris, J., setting aside an order for judgment in favor of defendants and the judgment entered thereon and granting a motion for a new trial. Reversed.

*C. W. Bunn* and *Hadley & Armstrong,* for appellants.

*J. W. Bull* and *H. L. Lord,* for respondents Kurtz and Leidner.

*Cash, Williams & Chester,* for respondent West Duluth Land Co.

MITCHELL, J. This is the third time this case has been before this court. 48 Minn. 339, 51 N. W. 221; 61 Minn. 18, 63 N. W. 1. After the cause was remanded on the last appeal, and on August 20, 1895, the defendant railroad companies moved for judgment in their favor on the findings of fact, the mandate of this court, and on the files and records in the action. This motion was granted on September 14, but with a stay of proceedings for 20 days with leave to plaintiff to move for a new trial. On October 5, the stay having expired, judgment was entered in favor of the defendant railway companies that plaintiffs take nothing by their suit. In the meantime, however, and on June 27, 1895, upon the application of plaintiffs, and upon notice or citation to Hayes and his grantee, the West Duluth Land Company, the probate court of St. Louis county had made an order or decree purporting to amend nunc pro tunc all the records and files in the probate proceedings which culminated in the guardian's sale to Hayes in May, 1872 (referred to on the former appeals), so that the land in controversy (the right of way) should be in terms excluded therefrom, and that the description should be amended by adding the words "excepting and excluding therefrom (the 80 acres) one hundred feet each side of the center line of the Lake Superior Railroad Company's railroad track, as laid over and across said land." This amendment was made to apply to all the proceedings, from the petition for license to sell to the guardian's deed, inclusive. On October 12, 1895, on motion of plaintiffs, of which notice was given September 30, the court set aside the judgment in favor of plaintiffs in this action, and granted a new trial. From this order the defendant railroad companies appealed.

The grounds upon which plaintiffs moved to vacate the judgment, and for a new trial, are not very clearly stated, but they are sub-

stantially two: First, that the legal effect of the decision of this court was to grant a new trial; and, second, newly-discovered evidence and accident and surprise.

1. Upon that appeal we held that the finding of fact that the land in controversy (the right of way) was not included in the guardian's sale to Hayes was unsupported by any competent evidence, and for that reason we set aside that finding, and reversed the judgment in plaintiffs' favor, because, with that finding gone, there was nothing to support the judgment. The other findings, which were not disturbed, entitled the defendant railway companies to judgment in their favor. We gave no directions as to how the court below should proceed, for the reason that we did not wish, under the circumstances, to cut off the plaintiffs or the defendant the Duluth Land Company from the chance of moving for a new trial if any sufficient cause for granting one existed. The district court was therefore left free to proceed in any manner it saw fit, not inconsistent with the opinion of this court. As the findings left undisturbed were sufficient upon which to base a judgment for the defendants, it was the duty of the court to enter judgment on defendants' motion. The order of this court reversing the judgment in plaintiffs' favor did not have the effect of granting a new trial. Jordan v. Humphrey, 32 Minn. 522, 21 N. W. 713; National Inv. Co. v. National Sav., Loan & Bldg. Assn., 51 Minn. 198, 53 N. W. 546; Backus v. Burke, 52 Minn. 109, 53 N. W. 1013; Babcock v. Murray, 61 Minn. 408, 63 N. W. 1076.

2. The remaining question is whether plaintiffs showed any sufficient cause for a new trial.

The only surprise which plaintiffs even suggest is at the decision of this court on the former appeal. We can hardly be expected to hold that that is any ground for a new trial. The only "newly-discovered" evidence is the judgment in this action against Hayes and his grantee, the West Duluth Land Company, from which they have not appealed, and the "amended" probate proceedings which plaintiffs allege that they desire to introduce on another trial against the defendant railway companies, as evidence to prove that the "right of way" was not included in the guardian's sale to Hayes. It would be more appropriate to call this "newly-created" evidence, and the claim of plaintiffs is that, because it did not exist at the time of the last trial, they could not introduce it, and therefore they

are entitled to a new trial, in which they can introduce it. The mere statement of the facts is sufficient, without argument, to show that the judgment in favor of plaintiffs against Hayes and the West Duluth Land Company would not be admissible in evidence against the defendant railway companies for any such purpose as that proposed.

The so-called "amendments" by the probate court of the guardian sale proceedings are an absolute nullity, the probate court having no jurisdiction to make them. State v. Probate Court of Ramsey Co., 19 Minn. 85 (117); State v. Probate Court of Sibley Co., 33 Minn. 94, 22 N. W. 10. Conceding to that court the same power possessed by other courts of record to correct mere clerical mistakes in its records, the pretense that this was such a case is the merest sham. If probate records can be tampered with in this manner after the lapse of nearly a quarter of a century, no title would be secure; for, on an average, every title passes through that court once in every generation.

But, even conceding the power of the probate court to do what it did, the plaintiffs were barred by gross laches from any right to a new trial. The defendant St. Paul & Duluth Railway Company, or rather its predecessor, obtained a guardian's deed (but which proved to be void) for this right of way, and went into possession in 1871, and has ever since remained in the actual, exclusive, and adverse possession of it. The guardian's deed to Hayes was executed in 1872, and was placed on record. The youngest of the Leidner heirs came of age in July, 1880. This action was not commenced until 1890, 10 years after the youngest heir came of age, and over 19 years after the St. Paul & Duluth Railroad Company went into possession. Plaintiffs were advised in 1891, by the decision of the district court, and in February, 1892, by the decision of this court, that the Hayes deed conveyed this right of way. If the probate records were capable of being amended, it was the duty, as well as within the power, of the plaintiffs to cause it to be done. But, without doing so, they chose to enter upon a second trial in 1894, relying upon their right to impeach the probate records collaterally. They were advised by this court on May 6, 1895, that this could not be done, and yet they made no move to have the probate records amended for nearly two months; and it was not until over three months

later, and not until September 30, that they moved for a new trial. Not a particle of excuse was offered for all this delay.

Under all the circumstances, and in view of the entire history of this litigation, we think that, under any view of the law, it was error to set aside the judgment, and to grant a new trial.

Order reversed, and judgment in favor of defendants reinstated.